IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
Jun 30, 2014
SUE BEITIA, CLERK

YOKO CASADOS, )    CIVIL NO. 13-00283 LEK-RLP
                              )
          Plaintiff,          )
                              )
     vs.                      )
                              )
LORI A. DRURY; AMERITAS LIFE  )
INSURANCE CORP.; DIANE PEREZ; )
GRACE CASADOS MARTINEZ; PETRA )
WILLIAMS; PATRICIA DIANE      )
JACOBS; ESTATE OF SAMUEL      )
FRANCISCO CASADOS; JOHN       )
and/or JANE DOES 1-20; DOE    )
ENTITIES 1-10,                )
                              )
          Defendants.         )
_____ )

**ORDER GRANTING IN PART AND DENYING IN PART THE AMERITAS
DEFENDANTS' MOTION FOR SUMMARY AND FINAL JUDGMENT**

          Before the Court is Defendants Ameritas Life Insurance

Corp. ("Ameritas") and Lori A. Drury's ("Drury," collectively

"Ameritas Defendants") Motion for Summary and Final Judgment

("Motion"), filed on February 7, 2014.  [Dkt. nos. 58-69.]

Plaintiff Yoko Casados ("Plaintiff") filed her memorandum in

opposition on May 12, 2014, and the Ameritas Defendants filed

their reply on May 14, 2014.[1]  [Dkt. nos. 90, 92.]  This matter

_____

          [1] On May 14, 2014, the Ameritas Defendants also filed their
Evidentiary Objections to Plaintiff and Counterclaim Defendant
Yoko Casados' Exhibits L, N and P Filed May 12, 2014 in
Opposition to Summary and Final Judgment ("Evidentiary
Objections").  [Dkt. no. 92-1.]  The Court finds that the
Ameritas Defendants' arguments do not have merit and denies the
Evidentiary Objections for the limited purpose of this Motion.
The Court notes, however, that it reaches its decision on the
                                             (continued...)

came on for hearing on June 2, 2014.  After careful consideration
of the Motion, supporting and opposing memoranda, and the
arguments of counsel, the Ameritas Defendants' Motion is HEREBY
GRANTED IN PART AND DENIED IN PART for the reasons set forth
below.

<u>**BACKGROUND**</u>

On June 4, 2013, Plaintiff filed her Complaint for
Damages ("Complaint") against the Ameritas Defendants and
Diane Perez ("Perez"), Petra Williams ("Williams"), Grace Casados
Martinez ("Martinez"), Patricia Diane Jacobs ("Jacobs"), the
Estate of Samuel Francisco Casados ("Samuel Casados's Estate"),
and John and/or Jane Does 1-10 and Doe Entities 1-10 ("Doe
Defendants"), asserting diversity jurisdiction.  [Complaint at
¶¶ 2-4.]  Plaintiff is a Hawai`i resident and claims that she was
married to Charles Casados ("Mr. Casados") "at all times
pertinent hereto."  [<u>Id.</u> at ¶ 5.]  Drury is an employee of
Ameritas, which is a Nebraska corporation.  [<u>Id.</u> at ¶¶ 6-7.]
Williams; Martinez, and Perez/Jacobs[2]; and Samuel Casados ("the
Casados Defendants") are the mother, two sisters, and brother,
respectively, of Mr. Casados and reside in Texas, with the

---

[1](...continued)
Motion independent of the exhibits challenged in the Evidentiary
Objections.

[2] Perez and Jacobs are actually the same person.  Thus, the
Court refers to this individual as Jacobs throughout this Order.

exception of Williams, who resides in Oklahoma. [Id. at ¶¶ 8–12.]

On August 15, 2013, the Ameritas Defendants filed a motion to dismiss ("Motion to Dismiss") and, at a hearing on October 2, 2013 ("10/2/13 Hearing"), the Court orally denied the Motion to Dismiss. [10/2/13 Hrg. Trans., filed 10/7/13 (dkt. no. 38), at 7–8.] On October 17, 2013, the Ameritas Defendants filed their answer and asserted a counterclaim against Plaintiff, individually and as the personal representative of the estates of Charles Casados ("Mr. Casados's Estate") and Stephanie Fay Casados ("Stephanie Casados's Estate"),[3] and against Plaintiff and Mr. Casados's surviving children, Charles Lee and Lisa Ann Casados ("the Casados Children"), and Does 1–10 ("Counterclaim"). [Dkt. no. 40 at pgs. 15–24.] They also asserted a cross-claim against the Casados Defendants for indemnification and/or contribution ("Ameritas Defendants' Cross-Claim"). [Id. at pgs. 25–30.] On November 7, 2013, the Casados Defendants filed their answer to the Complaint, and their First Amended Cross-Claim against Ameritas Life Insurance Corp. for indemnification and/or contribution should they be found liable to Plaintiff ("Casados Defendants' Cross-Claim"). [Dkt. no. 44 at pgs. 7–15.]

---

[3] Stephanie Casados was Plaintiff and Mr. Casados's minor daughter, who died along with Mr. Casados on January 27, 2011.

On January 16, 2014, Plaintiff and Lisa Ann Casados moved to dismiss the Counterclaim. [Dkt. no. 56.] On April 30, 2014, the Court issued an "Order Granting Counterclaim Defendants Lisa Ann Casados and Yoko Casados' Motion to Dismiss Counterclaim Filed on October 17, 2013, as to Counterclaim Defendants Charles Lee Casados and Lisa Ann Casados" ("4/30/14 Order"). [Dkt. no. 84.[4]]

The facts of this case, as alleged in the Complaint, are set forth in the 4/30/14 Order. In essence, Plaintiff claims that the Ameritas Defendants are liable to her for disbursing the proceeds ("Proceeds") of her estranged husband's life insurance policy ("Policy") to the Casados Defendants instead of to her, while she was making an adverse claim on the Proceeds; she also claims that the Casados Defendants are liable to her for the manner in which they sought and then retained the Proceeds. 4/30/14 Order, 2014 WL 1744765, at *1-3.

The Complaint alleges the following claims: breach of the duty of good faith and fair dealing by the Ameritas Defendants (and Doe Defendants) in violation of Haw. Rev. Stat.

---

[4] The 4/30/14 Order is also available at 2014 WL 1744765. On June 30, 2014, the Court issued its Order Denying Defendants Ameritas Life Insurance Corp. and Lori R. Drury's Motion for Reconsideration and/or Clarification of Order Granting Counterclaim Defendants Lisa Ann Casados and Yoko Casados' Motion to Dismiss Counterclaim Filed on October 17, 2013, as to Counterclaim Defendants Charles Lee Casados and Lisa Ann Casados, Order Filed April 30, 2014. [Dkt. no. 123.]

Chapter 431 ("Count I"); breach of the duty of good faith and fair dealing by the Casados Defendants (and Doe Defendants), related to settlement negotiations ("Count II"); violation of Hawaii's Unfair and Deceptive Act or Practices ("UDAP") law against the Ameritas Defendants, for disbursing the Proceeds while an active claim was pending ("Count III"); conversion against all Defendants ("Count IV"); and unjust enrichment against the Casados Defendants ("Count V"). [Complaint at ¶¶ 46-61.] Plaintiff seeks the following relief: a declaration of wrongdoing; general, special, and punitive damages, including the Proceeds and interest; attorneys' fees and costs as provided by Haw. Rev. Stat. Chapter 431; and treble damages under Haw. Rev. Stat. § 480-13. [Id. at pg. 14, ¶¶ 1-4.]

In the Motion, the Ameritas Defendants seek final judgment as to all claims that involve them: Counts I, III, and IV of the Complaint; the Cross-Claims between them and the Casados Defendants; and their Counterclaim against Plaintiff and the Casados Children.

## DISCUSSION

### I.    Count I - Bad Faith

As a technical matter, the Ameritas Defendants are correct that there is no private right of action under Haw. Rev. Stat. Chapter 431 for bad faith.  See Best Place, Inc. v. Penn Am. Ins. Co., 82 Hawai`i 120, 126, 920 P.2d 334, 340 (1996)

("Article 13 of the Hawai`i Insurance Code[5] does not authorize a private cause of action pursuant to its administrative remedies" (citation omitted)).  Although Count I alleges that the Ameritas Defendants breached the "duties of good faith and fair dealing to Plaintiff under Hawaii Revised Statutes Chapter 431," Plaintiff does not appear to limit herself to pleading bad faith under Chapter 431.  [Complaint at ¶ 48.]  She titles the cause of action, generally, "Bad Faith and Unfair Dealing," but, as opposed to Count III (which states "in Violation of HRS Chapter 480"), does not refer to a specific statutory provision.  [Id. at pg. 10.]  Further, in Count I, Plaintiff broadly alleges that she brings the claim "incident to Defendants Drury's communications with Plaintiff," which supports a common law bad faith claim. [Id. at ¶ 47.]  Thus, the Court construes Count I as alleging bad faith under both Chapter 431 and Hawai`i common law.  Hawai`i does recognize a private cause of action for bad faith in the insurance context.  See Best Place, 82 Hawai`i at 123, 920 P.2d at 337.  The Court therefore GRANTS summary judgment on Count I, but only as to the allegation of bad faith under the Insurance Code.

The Court also agrees with, and Plaintiff does not appear to contest, the Ameritas Defendants' argument that Hawai`i law does not permit a bad faith claim against claim examiners

---

[5] The Hawai`i Insurance Code is Chapters 431 to 435H.

like Drury.  See CIM Ins. Corp. v. Masamitsu, 74 F. Supp. 2d 975,

994 (D. Hawai`i 1999) (insurance handler "cannot be liable to the

[insured] for bad faith" (some citations omitted) (citing Moore

v. Allstate Ins. Co., 6 Haw. App. 646, 651, 736 P.2d 73, 77

(1987)).).  Thus, the Court GRANTS summary judgment on Count I,

but only as to the allegation of bad faith against Drury.

The Court rejects, however, the Ameritas Defendants'

contention that they are entitled to summary judgment on

Plaintiff's common law bad faith claim against Ameritas.

The Hawai`i Supreme Court has held that "there is a

legal duty, implied in a first-and third-party insurance

contract, that the insurer must act in good faith in dealing with

its insured, and a breach of that duty of good faith gives rise

to an independent tort cause of action."  Best Place, 82 Hawai`i

at 132, 920 P.2d at 346.  This duty extends to third-party

beneficiaries as well.  Donaldson v. Liberty Mut. Ins. Co., 947

F. Supp. 429, 432 (D. Hawai`i 1996) (allowing bad faith claim by

a third-party beneficiary).  "'The implied covenant is breached,

whether the carrier pays the claim or not, when its conduct

damages the very protection or security which the insured sought

to gain by buying insurance.'"  Id. (quoting Best Place, 82

Hawai`i at 132, 920 P.2d at 346)).  Also, "an insurer must act in

good faith in dealing with its insured and in handling the

insured's claim, even when the policy clearly and unambiguously

excludes coverage." <u>Enoka v. AIG Haw. Ins. Co., Inc.</u>, 109
Hawai`i 537, 552, 128 P.3d 850, 865 (2006).

To prove bad faith, "an insured 'need not show a
conscious awareness of wrongdoing or unjustifiable conduct, nor
an evil motive or intent to harm the insured.'" <u>Ill. Nat'l Ins.
Co. v. Nordic PCL Constr., Inc.</u>, Civil No. 11-00515 SOM/KSC, 2013
WL 5739639, *6-7 (D. Hawai`i Oct. 22, 2013) (quoting <u>Best Place</u>,
82 Hawai`i at 133, 920 P.2d at 347).  However, the "decision not
to pay a claim must be in 'bad faith,'" and "bad faith implies
unfair dealing rather than mistaken judgment[.]" <u>Best Place</u>, 82
Hawai`i at 133, 920 P.2d at 347 (citations omitted).

The Ameritas Defendants argue that they did not owe any
duty to Plaintiff because she was neither the insured nor a third
party beneficiary and, even if they did owe her a duty, they did
not breach it in disbursing the Proceeds to the Casados
Defendants because Plaintiff expressly disclaimed any interest in
the Proceeds.  [Mem. in Supp. of Motion at 3-5, 26-28.]  The
Court finds that, viewing the evidence in the light most
favorable to Plaintiff, there are genuine issues of material fact
as to whether and when Ameritas owed a duty to Plaintiff, and
whether Plaintiff intended to disclaim her rights to the
Proceeds.  <u>See</u> <u>Crowley v. Bannister</u>, 734 F.3d 967, 976 (9th Cir.
2013) (holding that at summary judgment, courts "must determine,
viewing the facts in the light most favorable to the nonmoving

party, whether there are any genuine issues of material fact

. . ." (citations and quotation marks omitted)).

On January 27, 2011, Mr. Casados and Stephanie Casados

drowned. [Ameritas Defs.' Concise Statement of Material Facts,

filed 2/7/14 (dkt. no. 58-1) ("Ameritas Defs.' CSOF"), Decl. of

Lisa Miller ("Miller Decl."), Exhs. 14, 15.[6]] On February 15,

2011, Plaintiff first notified Ameritas of her claim to the

Proceeds. Her attorney, Stephen H. Reese, Esq., wrote to

Ameritas to inform the insurer of Mr. Casados's death, and that

Plaintiff believed that Mr. Casados had changed the beneficiaries

of the Policy in violation of an order ("Relief Order") in the

family court divorce proceeding ("the Divorce Case") that

restrained him from doing so. [Pltf.'s Concise Statement of

Material Facts in Opposition to Ameritas Life Insurance Corp. and

Lori A. Drury's Motion for Summary Judgment and Final Judgment

Filed on February 7, 2014, filed 5/12/14 (dkt. no. 91) ("Pltf.'s

CSOF"), Decl. of Della A. Belatti ("Belatti Decl."), Exh. B

("2/15/11 Reese Ltr. to Ameritas", attaching Relief Order).] He

requested that Ameritas not release the Proceeds until the matter

was resolved.

---

[6] Along with the Miller declaration, the Ameritas Defendants also included the Declaration of Lori A. Drury ("Drury Declaration"). All of the exhibits attached to the Drury declaration are also attached to the Miller declaration. For that reason, the Court will only cite to the exhibits as attached to the Miller declaration.

Over three months later, on April 29, 2011, Drury emailed Mr. Reese, stating that she had received his letter, but explaining that Drury would need something in writing to make the claim or, if Plaintiff "decided not to make claims to the policy benefits," Drury would "need a Disclaimer Form and Hold Harmless Agreement signed by" Plaintiff. [Miller Decl., Exh. 17 ("4/29/11 Drury Email to Reese").] That same day, Drury also emailed Jacobs in response to an inquiry about how to obtain the Proceeds. Drury, wrote,

> I spoke with our attorney. He explained the process like this. . . . **We've received a letter from [Plaintiff's] Attorney stating that [Plaintiff] will be making claim to the Insurance benefit proceeds. Once we receive a notice like this, legally we have to put a hold on everything until the situation is resolved.** [Plaintiff's] Attorney has been notified that we need something in writing from [Plaintiff] stating she is making a claim to the proceeds. We advised him that if she has decided not to make a claim to the proceeds, we will need him to send us a Disclaimer Form and Hold Harmless Agreement signed by [Plaintiff] disclaiming her interest in the proceeds.
>
> **Legally an Insurance company cannot get in the middle of an adverse situation like this. If [Plaintiff] does not want to disclaim her Interest and she states in writing that she is making claim to the proceeds, we (Ameritas) will be forced to Interplead the proceeds which means the proceeds will be paid to the court for the court to decide who is entitled to the proceeds.** If she agrees to disclaim her interest in the proceeds, the process will be as simple as her signing a Disclaimer Form and Hold Harmless Agreement.

> This is where we stand right now.  I will
> notify you when I receive the information from
> [Plaintiff's] Attorney.

[Belatti Decl., Exh. C ("4/29/11 Drury Email to Jacobs")

(elipsis in original) (emphasis added).]

On May 11, 2011, as requested, Plaintiff wrote to

Drury informing her that she was "making a claim to the

benefits" of the Policy and, on June 1, 2011, Plaintiff made

the formal claim.  [Miller Decl., Exhs. 18 (letter), 19

(formal claim).]  On May 20, 2011, counsel for the Casados

Defendants, Everett Cuskaden, Esq., wrote Drury that the

Casados Defendants were disputing Plaintiff's claim to the

Proceeds, and requested that Drury not release the Proceeds

until the matter was fully resolved.  [Belatti Decl., Exh. F

("5/20/11 Cuskaden Ltr. to Drury").]

On July 12, 2011, in an email to Jacobs, Drury wrote

that, even though the family court had dismissed the Divorce

Case, it did not extinguish Plaintiff's claim to the Proceeds:

> I spoke with David Williams, Attorney for
> Ameritas in reference to this claim.  **Our attorney
> stated that we are still in the same situation as
> before.  Our attorney stated that even though we
> have a statement from the court stating that the
> divorce didn't exist, we still need a statement
> from [Plaintiff] stating she is dropping her
> claim.**  He stated that the Court did not say that.
> He said the Court just said that any claim she had
> needed to be decided in a different court.  In
> fact, the Court even gave examples of ways to
> pursue her claim.  **So this ruling was not final as
> to her claim.  She can drop it or we would likely**

> **have to file an interpleader.  Therefore, due to
> the fact that [Plaintiff] actually tried to make
> claim on the proceeds, we will need a statement
> from her stating she is no longer pursuing this
> claim and if she refuses to do so, we will need to
> file an Interpleader.**  He said that I could also
> send [Plaintiff] a letter stating that if we do
> not hear from her within 15 days, we are dropping
> her request for an Interest in the proceeds and we
> could then pay the proceeds to you and the other
> beneficiaries.  I will do that as well. . . .

[Miller Decl., Exh. 31 ("7/12/11 Drury Email to Jacobs")

(emphasis added).]

On July 21, 2014, in one letter, Drury informed

Plaintiff that she had received Plaintiff's formal claim **and**,

unprompted, also described the process by which Plaintiff could

retract that claim.  The letter also included information for

Plaintiff, as representative of Stephanie Casados's Estate, on

how to collect on the rider to the Policy ("the Rider").  In

substance, the letter provided:

> **We are in receipt of the claim forms
> concerning your claim** for the proceeds under the
> policy shown by number above.

> We have received notice from the courts that
> the divorce case has been extinguished/dismissed.
> Therefore, Charles R. Casados [sic]change of
> beneficiary is valid and you are not entitled to
> the proceeds under his life insurance policy
> number 1003123442.  **Please sign the enclosed
> disclaimer form so that we can move forward with
> this claim.**

> **Stephanie Casados was a rider under this
> policy** and the proceeds under this rider are
> payable to the Estate of Stephanie Casados as
> beneficiary.

12

**Our claim requirements consist of the following:**

- Certified Death Certificate
- Claimant's Statement Form UN 3963 completed by the Executor and notarized. . . .
- Copy of Court Order Appointing the Executor of the Estate of Stephanie Casados.
- **Disclaimer Form completed by you.**

[Miller Decl., Exh. 23 ("7/21/11 Drury Ltr. to Plaintiff") (emphasis added).]

A few weeks later, on August 1, 2011, Jared N. Kawashima, Esq., emailed Drury, informing her that he had been retained by Plaintiff to assert Plaintiff's claim to the Proceeds. [Miller Decl., Exh. 24 ("8/1/11 Kawashima Email to Drury").] He updated Drury that he had written to Mr. Cuskaden "to inquire whether he is willing to send you a joint request for Ameritas to transfer the contested funds into an escrow account here in Hawaii so that we may reach an amicable resolution without further involvement with Ameritas." [Id.] Further, he wrote that, "Mr. Reese will be forwarding you the necessary paperwork to collect on the rider." [Id.] Nowhere did Mr. Kawashima imply that Plaintiff intended to disclaim her interest in the Proceeds, and Ameritas states that it has no records of any communications between Mr. Kawashima and Ameritas or Drury between early August 2011 and late January 2012, after Ameritas disbursed the Proceeds to the Casados Defendants. [Miller Decl. at ¶ 17.]

13

Then, on November 28, 2011, Mr. Reese wrote Drury regarding Stephanie Casados's Estate ("11/28/11 Reese Ltr. to Drury"). The substance of the letter stated:

> **I represent Yoko Casados, Personal Representative of the Estate of S.F.C., Deceased.** The identity of "S.F.C" is **Stephanie Fay Casados**. Please note that Hawaii Court records Rule 2, requires that the identity of a minor child be submitted under seal.
>
> **Enclosed please find the following documents per your request:**
>
> . . . .
>
> Also enclosed is a copy of your letter dated July 21, 2011 for your reference. Upon completion of the processing of the policy rider under the life insurance policy of Charles R. Casados, we would appreciate it if you would return the certified copy of Stephanie's death certificate.
>
> If you have any questions or require additional documentation, please don't hesitate to contact my office. . . .

[Miller Decl., Exh. 25 (emphasis added).] The letter attaches: Stephanie Casados's death certificate; the claim on the Rider; and letters of administration, and related materials for Stephanie Casados's Estate. [Belatti Decl., Exh. M at Ameritas_0125-31.] It also includes a disclaimer ("Disclaimer") that states, "I, <u>Yoko Casados</u>, residing at <u>469 Ena Rd #2003 Honolulu, HI 96815</u>, do hereby withdraw my claim for the proceeds under Polic(ies) <u>1003123442</u> issued on the life of <u>Charles R Casados</u> who died on <u>1-27-11</u>. [<u>Id.</u> at Ameritas_0124 (form disclaimer with underlining showing handwritten additions).] A

14

few weeks later, on December 13, 2011, Ameritas disbursed the Proceeds to the Casados Defendants.[7] [Miller Decl., Exh. 26.]

The undisputed facts show that, as early as February 15, 2011, Ameritas was on notice that Plaintiff claimed a right to the Proceeds as a beneficiary under the Policy, [2/15/11 Reese Ltr. to Ameritas,] and thus it had a duty to Plaintiff. Ameritas acknowledged this duty in its communications with Mr. Reese and with Jacobs. Drury wrote to Mr. Reese that, even if Plaintiff decided not to make a claim to the Proceeds, Ameritas would need a disclaimer form and a hold harmless agreement. [4/29/11 Drury Email to Reese.] Similarly, Drury explained to Jacobs that "legally" Ameritas had to "put a hold on everything until the situation is resolved" and Ameritas would be "forced to Interplead the proceeds" if Plaintiff did not retract her claim. [4/29/11 Drury Email to Jacobs.] Although Ameritas now argues it had no duty to Plaintiff, at the time of the 4/29/11 Drury Email to Jacobs, it expressly stated that it did.

Ameritas acknowledged the duty it had to Plaintiff even after the family court dismissed the Divorce Case. The Ameritas Defendants argue that the Relief Order did not limit Mr. Casados's right to change beneficiaries and, even if it had, it was superseded by a later marital agreement, and by the

_____

[7] Ameritas did not disburse Samuel Casados's portion of the Proceeds until January 27, 2012. [Miller Decl., Exh. 28.]

dismissal of the Divorce Case prior to the disbursement.  [Mem.
in Supp. of Motion at 5-6, 19-23.]  The Court does not, however,
reach the issue here of what effect, if any, the Divorce Case had
on Plaintiff's right to the Proceeds.  It is enough that Ameritas
acknowledged contemporaneously that its duty to Plaintiff
continued even after the Divorce Case dismissal.  Ameritas
explained that the dismissal "was not final as to [Plaintiff's]
claim[,]" that Ameritas would still "likely have to file an
interpleader[,]" and that it would "need a statement from
[Plaintiff] stating she [was] no longer pursuing this claim and
if she refuse[d] to do so, we will need to file an Interpleader."
[7/12/11 Drury Email to Jacobs.]  Viewed in the light most
favorable to Plaintiff, there is a genuine issue of material fact
as to whether Ameritas owed a duty to Plaintiff as a beneficiary
under the Policy.  See Crowley, 734 F.3d at 976.

        Further, under the circumstances, this Court finds that
a genuine issue of material fact remains as to whether Plaintiff
intended to disclaim her right to the Proceeds.  Plaintiff
communicated regularly over a period of months with Ameritas,
both individually and through her attorneys, that she was
pursuing her right to the Proceeds.  The Ameritas Defendants have
not offered any evidence, and the Court is aware of none – other
than the actual disclaimer – that shows that Plaintiff planned to
renege on her claim to the Proceeds.  Even the communications

leading up to and accompanying the disclaimer, do not show that Plaintiff intended to disclaim her interest.

In her July 21, 2011 letter, Drury acknowledged that Ameritas had received Plaintiff's claim form. Then, in the very next paragraph, Drury wrote that Plaintiff should "sign the enclosed disclaimer form so that we can move forward with **this claim**." [7/21/11 Drury Ltr. to Plaintiff.] The next two paragraphs appear to relate to the Rider, including the last item in the list of materials required, "Disclaimer Form completed by you." Viewed in the light most favorable to Plaintiff, it is not clear which claim Drury was referring to – the claim on the Policy, the claim on the Rider, or a "claim" to disclaim her interest in the Policy – the latter of which is what the Ameritas Defendants argue is the correct interpretation. Further, it is not clear why the Disclaimer Form was included in a list of "claim requirements."

Further, Plaintiff continued to pursue her claim after the 7/21/11 Drury Letter to Plaintiff, and Mr. Kawashima wrote Drury, on August 1, 2011, that he was pursuing Plaintiff's rights under the Policy, and was negotiating with the Casados Defendants. He stated that "Mr. Reese will be forwarding you the necessary paperwork to collect on the rider." [8/1/11 Kawashima Ltr. to Drury.] Finally, in sending the disclaimer back to Drury, Mr. Reese wrote that he was sending the documents per

Drury's request, and discussed the Estate of Stephanie Casados, but not Plaintiff's claim to the Proceeds. [11/28/11 Reese Ltr. to Drury.] Although the Court agrees with the Ameritas Defendants that the disclaimer appears clear on its face, in light of the circumstances, and the confusing language in the 7/21/11 Drury Letter to Plaintiff, the Court finds that there is a genuine issue of material fact of whether Plaintiff intended to disclaim her rights to the Proceeds.

Since there are genuine issues of material fact as to whether Ameritas owed a duty of good faith to Plaintiff, and as to whether Plaintiff intended to retract her claim to the Proceeds, the Court DENIES summary judgment on Plaintiff's Count I insofar as it alleges the common law tort of bad faith against Ameritas. See Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[8]

---

[8] For the same reasons, the Court also rejects the Ameritas Defendants' legal arguments that: (1) at most their actions were erroneous, but not unreasonable, and thus cannot support a finding of bad faith; [Mem. in Supp. of Motion at 20, 28;] and (2) the bad faith claim is barred by Haw. Rev. Stat. § 431:10-230, which discharges an insurer upon payment to named beneficiaries where no adverse claim is made [id. at 4-5, 29-30]. There is a genuine issue of material fact as to whether Ameritas acted reasonably and as to whether there was an adverse claim to the Proceeds at the time Ameritas disbursed them to the Casados Defendants.

## II.  __Count III - UDAP__

In Count III, Plaintiff alleges that: (1) Drury knew that there was an open dispute over the Proceeds between Plaintiff and the Casados Defendants; (2) in an August 8, 2011 email to Mr. Kawashima ("8/8/11 Drury Email to Kawashima"), Drury agreed not to disburse the Proceeds; and (3) Drury disbursed them to the Casados Defendants nonetheless.  Taken together, Plaintiff alleges that this constitutes deceptive acts or practices in violation of Haw. Rev. Stat. Chapter 480.  [Complaint at ¶¶ 53-54.]

The Ameritas Defendants take the position that Drury made no such promise.  They rely on the wording of the 8/8/11 Drury Email to Kawashima.  As already discussed in this Order, see supra Discussion § I. above, Mr. Kawashima emailed Drury on August 1, 2011 to introduce himself, reassert Plaintiff's claim, inform Drury that Mr. Reese would be forwarding paperwork related to the Rider, and to update Drury regarding settlement discussions with the Casados Defendants and a request he made to Mr. Cuskaden to put the Proceeds in escrow.  [8/1/11 Kawashima Email to Drury.]  Mr. Kawashima concluded, "I will keep you apprised of Mr. Cuskaden's response."  [Id.]

In response, Drury wrote,

Hello Mr. Kawashima,
Thank you for the update.  I look forward to hearing back from you.
Thank you, Lori Drury, Claim Examiner

[Miller Decl., Exh. 30 (8/8/11 Drury Email to Kawashima) at 1.]

The Ameritas Defendants argue that Drury did not, in her email, promise to wait to hear back from Mr. Kawashima. [Mem. in Supp. of Motion at 31; Evidentiary Objections at 3-4.] While the Court agrees with the Ameritas Defendants that, strictly speaking, her short, informal response did not expressly state that she would wait to hear back from Mr. Kawashima, within the context of the dispute and in the light most favorable to Plaintiff, her response could reasonably be construed to show implicit agreement not to disburse the Proceeds until she heard from one of Plaintiff's attorneys that Plaintiff was retracting her claim. While Mr. Kawashima did not expressly request she not disburse the Proceeds, both Mr. Reese and Mr. Cuskaden had already done so, [2/15/11 Reese Ltr. to Ameritas; 5/20/11 Cuskaden Ltr. to Drury,] and Mr. Kawashima did write that he was retained by Plaintiff to "assert her rights" [8/1/11 Kawashima Email to Drury]. Thus, the Court finds that it is a disputed issue of material fact whether the Ameritas Defendants agreed not to disburse the Proceeds.

The Ameritas Defendants also argue that Plaintiff was not a "consumer" under Haw. Rev. Stat. § 480-1, presumably because she did not purchase the Policy. Thus, pursuant to § 480-2, Plaintiff does not have standing to bring Count III. [Mem. in Supp. of Motion at 31-32.] As discussed above, there is

a genuine issue of material fact as to whether Plaintiff was a third-party beneficiary of the Policy. A third-party beneficiary does have standing as a "consumer" to bring a UDAP claim. See Donaldson, 947 F. Supp. at 433 ("Plaintiff, a third-party beneficiary of an insurance contract between Defendant and a consumer, has standing to bring a deceptive acts or practices claim pursuant to Haw. Rev. Stat. § 480-2."). Thus, there is a genuine issue of material fact as to whether Plaintiff has standing to bring the UDAP claim.[9] The Court therefore DENIES the Motion as to Count III.

### III.  **Count IV - Conversion**

Plaintiff's Count IV (conversion) implicates the Ameritas Defendants only insofar as Plaintiff alleges that "[a]t all times pertinent hereto, Plaintiff owned and/or had the right to possession" of the Proceeds and that the Ameritas Defendants' "distribution of the [Proceeds] to [the Casados Defendants] constituted conversion inconsistent with [her] ownership and/or right to possession" of the Proceeds. [Complaint at ¶¶ 56-57.] The Ameritas Defendants argue that these allegations are

---

[9] The Court also notes that, since Plaintiff may be Mr. Casados's legal widow, and there is no current dispute that Mr. Casados's Estate paid premiums on the Policy, Plaintiff may have standing on this basis as well. Plaintiff has not raised this argument, and there is no evidence in the record addressing this point, so the Court does not decide the Motion on this ground.

insufficient as a matter of law to support a conversion claim against them.  [Mem. in Supp. of Motion at 32-34.]

To prevail on a conversion claim, a plaintiff must prove the following elements:  "'(1) A taking from the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand.'"  <u>Freddy Nobriga Enters., Inc. v. State, Dep't of Hawaiian Home Lands</u>, 129 Hawai`i 123, 129, 295 P.3d 993, 999 (Ct. App. 2013) (quoting <u>Tsuru v. Bayer</u>, 25 Haw. 693, 696 (1920)).

There is no genuine dispute that the Ameritas Defendants did not take the Proceeds from Plaintiff or Mr. Casados without consent.  Mr. Casados purchased and paid for the Policy.  Thus, Plaintiff cannot prove the first element of conversion, that the Ameritas Defendants ever took anything of value from Plaintiff.

Similarly, even if they wrongfully held the Proceeds beyond when they should have disbursed them to her, there is no evidence that the Ameritas Defendants ever assumed or attempted to assume ownership of the Proceeds.  Therefore, there is no dispute that Plaintiff cannot prove element two.  On this basis alone, Plaintiff's conversion claim against the Ameritas Defendants must fail as a matter of law.

Although it does not decide the Motion on this basis, the Court further questions whether the Proceeds can be considered a chattel for the purposes of conversion. Neither party has directed the Court to any Hawai`i law addressing this issue, and the Court is not aware of any. The Court recently predicted that the Hawai`i Supreme Court would hold that conversion does not extend to the taking of intangible property, in particular, the taking of a video broadcast. See J & J Sports Prods., Inc. v. Alcantara, Civil No. 13-00220 LEK-RLP, 2014 WL 1669070, at *5 (D. Hawai`i Apr. 25, 2014). The issue of whether life insurance Proceeds can be considered chattel is a closer issue since the Proceeds are not strictly intangible. Further, a number of jurisdictions allow claims for conversion of money where there is a specific, identifiable sum involved. See, e.g., Edwards v. Prime, Inc., 602 F.3d 1276, 1303 (11th Cir. 2010) (stating that Alabama law allows conversion claims for "earmarked money or specific money capable of identification"); Liberty Life Ins. Co. v. Myers, No. CV 10-2024-PHX-JAT, 2013 WL 530317, at *12 (D. Ariz. Feb. 12, 2013) ("However, the modern rule, in which Arizona joins, is that money can be the subject of a conversion provided that it can be described, identified or segregated, and an obligation to treat it in a specific manner is established." (citation and quotation marks omitted)); Cannon v. Wells Fargo Bank, N.A., 926 F. Supp. 2d 152, 176 (D.D.C. 2013) ("Money can be

the subject of a conversion claim only if the plaintiff has the right to a specific identifiable fund of money." (citation and quotation mark omitted)).[10]

Specifically, under California law, a plaintiff can state a cause of action for conversion of a "specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment." Kim v. Westmoore Partners, Inc., 133 Cal. Rptr. 3d 774, 789 (Cal. Ct. App. 2011) (citation and quotation marks omitted). However, the focus of this type of conversion action is on the misappropriation of the money to the agent itself. See id. ("A cause of action for conversion of money can be stated only where defendant interferes with plaintiff's **possessory interest** in a specific, identifiable sum, such as when a trustee or agent misappropriates the money entrusted to him." (emphasis in original)). Thus, even if Hawai`i followed California law and found that life insurance proceeds could be considered chattel under certain circumstances, dismissal of Count IV would be

_____

[10] The Court notes, however, that some states that do permit conversion of money claims deny them where an insurer simply fails to pay the insured proceeds that the insured alleges she is owed. See, e.g., Kia v. Imaging Sciences Int'l, Inc., 735 F. Supp. 2d 256, 270 (E.D. Pa. 2010) (under Pennsylvania law, "an insured [can] not sue his insurer for conversion when the insurer retained premium payments and refused to pay benefits" (citation omitted)); c.f., Gossels v. Fleet Nat'l Bank, 902 N.E.2d 370, 378 (Mass. 2009) ("Banks are not liable for conversion when they fail to pay funds that they owe to a customer.").

warranted because the Ameritas Defendants did not misappropriate the Proceeds to themselves.

Since the Court disposes of this claim on other grounds, the Court does not reach the issue of whether, under the circumstances of this case, the Proceeds would be considered chattel under Hawai`i law. The Court GRANTS summary judgment in favor of the Ameritas Defendants on Count IV.

## IV. **Other Claims**

The Ameritas Defendants also moved for summary judgment on both the Ameritas Defendants' Cross-Claim and the Casados Defendants' Cross-Claim. The Casados Defendants did not oppose the Motion. In fact, at the hearing on the Motion, counsel for the Casados Defendants joined in the Motion. Thus, the Motion is GRANTED as to the Cross-Claims. The Court therefore GRANTS summary judgment in favor of the Ameritas Defendants on the Casados Defendants' Cross-Claim and the Ameritas Defendants' Cross Claim.

The Ameritas Defendants also moved for summary judgment on the Counterclaim. Since the Court has already disposed of the Counterclaim as to the Casados Children, see 4/30/14 Order, the Court DENIES the Motion for summary judgment on the Counterclaim as to the Casados Children as moot. For the reasons stated above as to Count I, genuine issues of material fact exist as to whether Plaintiff is a beneficiary of the Policy and whether she

retracted her claim to the Proceeds, and thus the Court DENIES the Motion as to the Counterclaim against Plaintiff at this time.

Finally, the Ameritas Defendants appear to move for final judgment on the claims. Insofar as this order only disposes of Count IV and the Cross-Claims, directing entry of final judgment on those claims only at this time would neither serve judicial administrative interests nor the equities of the parties. See Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 8 (1980). Further, the Ameritas Defendants do not make any showing that there are any just reasons to grant judgment, pursuant to Fed. R. Civ. P. 54(b), at this time. [Mem. in Supp. of Motion at 43.] Therefore, the Court DENIES the Motion insofar as it seeks final judgment on the claims.

## V.    **Summary of Rulings**

The Motion is HEREBY GRANTED in favor of the Ameritas Defendants as to:

- Count I insofar as the Complaint alleges bad faith in violation of Haw. Rev. Stat. Chapter 431, and bad faith under Hawai`i common law against Drury;

- Count IV against the Ameritas Defendants; and

- the Ameritas Defendants' Cross-Claim and the Casados Defendants' Cross-Claim.

The Motion is HEREBY DENIED as to:

- Count I insofar as the Complaint alleges bad faith under Hawai`i common law against Ameritas;

- Count III against the Ameritas Defendants;

- the Counterclaim against Plaintiff;

- the Counterclaim against the Casados Children insofar as it is moot; and

- the Ameritas Defendants' request for final judgment on any of the claims.

## CONCLUSION

On the basis of the foregoing, the Ameritas Defendants' Motion for Summary and Final Judgment, filed on February 7, 2014, is HEREBY GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, June 30, 2014.



      /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**YOKO CASADOS VS. LORI A. DRURY, ET AL.; CIVIL 13-00283 LEK-RLP; ORDER GRANTING IN PART AND DENYING IN PART THE AMERITAS DEFENDANTS' MOTION FOR SUMMARY AND FINAL JUDGMENT**